UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| JEREMY MICHAEL M., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS** <br><br> Case No. 1:20-cv-00122 <br><br> Magistrate Judge Daphne A. Oberg |

Plaintiff Jeremy M.[1] filed this action asking the court to reverse the Acting Commissioner of the Social Security Administration's ("Commissioner") decision denying his application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–434, 1381–1385 and award him benefits, or, alternatively, to remand to the Commissioner for consideration of additional evidence. (Pl.'s Opening Br. 4, Doc. No. 30.)  The Administrative Law Judge ("ALJ") denied Mr. M.'s application, finding he did not qualify as disabled. (Certified Tr. of Admin. R. ("Tr.") 19–38, Doc. No. 21.)  The court[2] has carefully reviewed the record and the parties' briefs.[3]  Because the ALJ applied an incorrect

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including Social Security cases, the court refers to Plaintiff by his first name and last initial only.

[2] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  (Doc. No. 16.)

[3] The appeal will be determined on the written memoranda, as oral argument is unnecessary. DUCivR 7-1(g).

1

legal standard when determining whether Mr. M. meets the criteria of listing 11.02, the Commissioner's decision is reversed and the case is remanded for further consideration.

## STANDARD OF REVIEW

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code provide for judicial review of a final decision of the Commissioner. In social security appeals, the district court is not the fact finder; it does not make determinations of fact. *C.f., Peplinski v. Saul*, 454 F. Supp. 3d 1119, 1124 (D. Kan. 2020). This court reviews the ALJ's decision and the whole record to determine (1) whether substantial evidence supports the ALJ's factual findings and (2) whether the ALJ applied the correct legal standards. 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). The court may not substitute its judgment for that of the ALJ nor may it reweigh the evidence. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

"[A]n ALJ's factual findings . . . shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153, ___ U.S. ___ (2019) (internal quotation marks omitted). Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla." *Id.* at 1154 (internal quotation marks omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (internal quotation marks omitted).

APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *see also id.* § 1382c(a)(3)(A). Under the Social Security Act, an individual is considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* §§ 423(d)(2)(A); 1382c(a)(3)(B).

In determining whether a claimant qualifies as disabled within the meaning of the Social Security Act, the ALJ employs a five-step sequential evaluation. The analysis requires the ALJ to consider whether:

1) The claimant presently engages in substantial gainful activity;

2) The claimant has a severe medically determinable physical or mental impairment;

3) The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which precludes substantial gainful activity;

4) The claimant possesses a residual functional capacity to perform past relevant work; and

5) The claimant possesses a residual functional capacity to perform other work in the national economy considering his or her age, education, and work experience.

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the

burden, in the first four steps, of establishing the disability. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work existing in the national economy. *Id.*

Mr. M. is proceeding pro se, thus his filings are liberally construed and held "to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Still, a pro se plaintiff must "follow the same rules of procedure that govern other litigants." *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (internal quotation marks omitted). While the court must make some allowances for a pro se plaintiff's "failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements," *Hall*, 935 F.2d at 1110, the court "will not supply additional factual allegations to round out a plaintiff's [pleading] or construct a legal theory on a plaintiff's behalf," *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (internal quotation marks omitted).

## PROCEDURAL HISTORY

Mr. M. applied for disability insurance benefits on July 18, 2017 and supplemental security income benefits on August 17, 2017, alleging disability beginning on April 7, 2016. (Tr. 227, 229.) On September 23, 2019, after a hearing, the ALJ found Mr. M. was not disabled. (*Id.* at 19–38.)

At the first step of the five-step sequential evaluation, the ALJ found Mr. M. had not engaged in substantial gainful activity since April 7, 2016. (*Id.* at 24.) At step two, the ALJ found Mr. M. had the severe impairments of mild neurocognitive disorder, with specific deficits in working memory, reading, written expression and mathematics; attention deficit hyperactivity disorder (ADHD); obesity; and recurrent headaches. (*Id.* at 25.) He found Mr. M. had the

following non-severe impairments: obstructive sleep apnea, hypertension, and past substance abuse. (*Id.*) At step three, the ALJ concluded Mr. M.'s impairments did not meet or equal an impairment listing. (*Id.* at 26.) In reaching this conclusion, the ALJ found Mr. M.'s headaches did not equal listing 11.02, covering epilepsy, because there was no evidence in the record that Mr. M. suffered from seizures. (*Id.*) At step four, the ALJ found Mr. M. had the residual functional capacity (RFC)[4] to perform light work with the following limitations:

> [H]e can never be exposed to extreme heat or extreme cold, or industrial hazards such as industrial machinery or unprotected heights. He can only make simple work-related judgments and decisions. He can understand, remember and carry out only short and simple instructions. He can have no more than occasional changes in a routine work setting. He can have no more than occasional contact with public, coworkers or supervisors.

(*Id.* at 28.) Based on this RFC and the testimony of a vocational expert, the ALJ concluded Mr. M. could not perform past relevant work as an oil field worker, hand packager, or construction worker. (*Id.* at 36.) However, at step five, the ALJ found jobs existed in significant numbers in the national economy which Mr. M. could perform considering his age, education, work experience, and RFC—including garment folder, produce weigher, and electrode cleaner. (*Id.* at 37–38.) Therefore, the ALJ found Mr. M. was not disabled. (*Id.* at 38.)

The Appeals Council denied Mr. M.'s request for review, (*id.* at 1–4), making the ALJ's decision final for purposes of judicial review.

## DISCUSSION

Mr. M. makes three claims of error regarding the ALJ's decision. He argues the ALJ erred (1) in finding he did not meet the criteria of a listing, (2) in not adequately considering his

---

[4] An individual's RFC is the most the individual can do considering his/her/their limitations. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

5

headaches, including a new diagnosis, and (3) by improperly evaluating his RFC. (Pl.'s Opening Br. 2–4, Doc. No. 30.)

    I.   *Listing 11.02*

Mr. M. argues the ALJ erred by evaluating his headache and traumatic brain injury impairment under the improper listing: listing 11.02, which covers epilepsy. (Pl.'s Opening Br. 4, Doc. No. 30; Pl.'s Reply Br. 3, Doc. No. 36.)

The listings at 20 C.F.R. part 404, subpart P, appendix 1, cover medical conditions so debilitating they warrant an automatic presumption of disability without further consideration of the claimant's residual functional capacity or ability to perform past or other work. *See Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). At step three, a claimant has the "burden to present evidence establishing her impairments meet or equal listed impairments." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). To satisfy this burden, a claimant must establish her impairment "meet[s] *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Zebley*, 493 U.S. at 530. However, a claimant need not identify a specific listing. *See Fisher-Ross*, 431 F.3d at 733 n.3; *see also Peterson v. Kijakazi*, No. 4:20-cv-00081, 2021 U.S. Dist. LEXIS 147486, at *7–8 (D. Utah Aug. 5, 2021) (unpublished) ("While Plaintiff has the burden at strep three to present evidence establishing her impairments meet or equal listed impairments, she does not have the burden at step three of actually identifying any relevant listing.").

Mr. M. complains the ALJ used an epilepsy listing to assess his headaches. But this approach is supported by social security regulations. "Primary headache disorder is not a listed impairment," but it may, "alone or in combination with another impairment(s), medically equal[] a listing." Social Security Ruling ("SSR") 19-4p, 2019 SSR LEXIS 6, *16. The "most closely

analogous listed impairment" is epilepsy, in listing 11.02. *Id.* Although "uncommon," a person with a "primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures)." *Id.* Under such circumstances, the individual's impairment medically equals the listing. *Id.*

Listing 11.02 requires a "detailed description of a typical seizure" characterized by the criteria set out in paragraph A, B, C, or D. 20 C.F.R. pt. 404, subpt. P, app'x I, § 11.02. Relevant here, paragraph B of listing 11.02 requires dyscognitive seizures occurring at least once a week for at least three consecutive months, despite adherence to prescribed treatment. *Id.* § 11.02(B). Paragraph D includes the following criteria:

> Dyscognitive seizures, occurring at least once every 2 weeks for at least 3 consecutive months, despite adherence to prescribed treatment; and a marked limitation in one of the following:
> 1. Physical functioning; or
> 2. Understanding, remembering, or applying information; or
> 3. Interacting with others; or
> 4. Concentrating, persisting, or maintaining pace; or
> 5. Adapting or managing oneself.

*Id.* § 11.02(D).

To determine whether a primary headache disorder equals the severity and duration of the criteria in § 11.02(B), the ALJ must consider a detailed description of "a typical headache event, including all associated phenomena . . . the frequency of headache events; adherence to prescribed treatment; side effects of treatment," as well as "limitations in functioning," from the headaches or treatment including "interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations)." SSR 19-4p, 2019 SSR LEXIS 6, *17. Similarly, to evaluate whether a claimant's headaches are "equal in severity and duration" to § 11.02(D), the ALJ must consider the same factors as those for § 11.02(B), plus

7

"whether the overall effects of the primary headache disorder on functioning results in marked limitation in: physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself." *Id.* at *17–18.

Here, the ALJ found Mr. M.'s headaches did not meet the criteria for listing 11.02 solely based on the lack of evidence of "generalized or dyscognitive seizures occurring within listing-level frequency or with severity resulting in marked limitations in physical or mental functioning." (Tr. 26.) This reflects a faulty analysis. The SSR does not require a claimant with primary headache disorder to meet each of the listing requirements for epilepsy, including the seizure requirements. If that were required, the claimant would simply be establishing the listing for epilepsy applied on its face, which would render Social Security Ruling 19-4p moot. This ruling explicitly addresses whether a headache impairment *medically equals* the criteria of listing 11.02, not whether it *meets* the criteria. "Simply stated, evidence that a claimant did not experience seizures is irrelevant to the question of whether that claimant's migraine impairment is medically equivalent to Listing 11.02." *Jandt v. Saul*, No. 1:20-cv-00045, 2021 U.S. Dist. LEXIS 24534, at *20 (W.D. Ky. Feb. 8, 2021) (unpublished).

Where the ALJ legally erred by finding Mr. M.'s headaches did not meet the criteria of listing 11.02 only because there was no evidence of seizures (instead of applying the factors from Social Security Ruling 19-4p to determine whether Mr. M.'s headaches medically equaled the criteria), the case must be remanded.

    II.   *Consideration of Headaches*

Mr. M. also claims the ALJ failed to adequately consider evidence of his headaches, particularly an MRI report from April 12, 2019. (Pl.'s Opening Br. 2, Doc. No. 30.) Mr. M.

8

alleges this report shows traumatic brain injury and intracranial hypotension with cerebrospinal fluid leak. (*Id.* (citing Tr. 443–44).) Despite this MRI result, Mr. M. explains his doctor, Brett Alldredge, continued to treat him for migraines with no success. (*Id.* at 2–3.) In March 2020, Mr. M. received a second opinion from Dr. Viktoria Kaplan, who diagnosed him with intracranial hypotension with cerebrospinal fluid leak, based on the 2019 MRI. (*Id.* at 3.)

Mr. M.'s primary grievance appears to be the ALJ's consideration of his prior misdiagnosis of his headaches as migraines rather than intracranial hypotension with cerebrospinal fluid leak. (*See id.* at 2–4; Pl.'s Reply Br. 2, Doc. No. 36.) According to Mr. M., the 2019 MRI report warrants his new diagnosis. (Pl.'s Opening Br. 3, Doc. No. 30; Pl.'s Reply Br. 2, Doc. No. 36.) Mr. M. seems to suggest the ALJ should have discovered this diagnosis from the record evidence. (Pl.'s Opening Br. 3–4, Doc. No. 30; Pl.'s Reply Br. 2, Doc. No. 36.) But the ALJ is tasked with resolving factual disputes, *c.f. Peterson v. Kijakazi*, No. 4:20-cv-00081, 2021 U.S. Dist. LEXIS 147486, at *8 (D. Utah Aug. 5, 2021) (unpublished), and weighing the evidence, *Lax*, 489 F.3d at 1084. "[T]he ALJ may not make his own diagnosis based upon the signs, symptoms, and laboratory findings of record." *Gonzalez v. Astrue*, No. 1:07-cv-048, 2009 U.S. Dist. LEXIS 111765, at *9 (N.D.N.Y. Oct. 2, 2009) (unpublished); *see also Kemp v. Bowen*, 816 F.2d 1469, 1476 (10th Cir. 1987) (noting the ALJ "can not interpose his own 'medical expertise' over that of a physician").

Because Dr. Kaplan diagnosed Mr. M. with intracranial hypotension with cerebrospinal fluid leak after the ALJ issued his decision, the new diagnosis was not before the ALJ. (*See* Def.'s Answer Br. 7, Doc. No. 35.) Thus, the ALJ did not err in not considering the new diagnosis. However, because the case is remanded on other grounds, it is appropriate for the ALJ to consider this new evidence on remand. *See Hargis v. Sullivan*, 945 F.2d 1482, 1493

(10th Cir. 1991) (ordering the agency to consider, where the decision was remanded on other grounds, evidence unavailable at the administrative hearing or before the district court).

III. *Residual Functional Capacity*

Lastly, Mr. M. argues the ALJ's RFC determination is incorrect because the ALJ failed to account for (1) his intracranial hypotension and cerebral spinal fluid leak and (2) failed to include a noise restriction. (Pl.'s Opening Br. 4, Doc. No. 30; Pl.'s Reply Br. 2, Doc. No. 36.) Considering the remand, this argument is moot as the ALJ will make a new RFC determination.

## CONCLUSION

For the reasons set forth above, the court REVERSES the Commissioner's decision and REMANDS the case for further proceedings before the Social Security Administration consistent with this order, including consideration of Mr. M.'s new diagnosis.

DATED this 24th day of March, 2022.

BY THE COURT:

*[signature]*
Daphne A. Oberg
United States Magistrate Judge